UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

RUBY L. ROSS,

    Plaintiff,

-vs-                                  CASE NO. 2:06-cv-340-FtM-29DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT

The plaintiff, Ruby L. Ross, appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for social security disability, disability insurance benefits and Supplemental Security Income.[1] For the reasons set forth below, it is recommended that this case be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). .

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memorandums.

---

[1] Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

1

I.  **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION, AND STANDARD OF REVIEW**

The plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A).  The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On or about July 9, 2003, the plaintiff filed an application for disability, disability insurance benefits and Supplemental Security Income, asserting a disability onset date of June 9, 2002. [Tr. 52-54].  The plaintiff's application was denied initially, and she has exhausted her administrative remedies.  The plaintiff meets the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(I) of the Social Security Act through December 31, 2007. [Tr. 17].   The plaintiff must prove that she was disabled on or before that date.  20 C.F.R. § 404.131(a)(1999).

The Decision of Administrative Law Judge (ALJ) Delores McNerney, dated January 20, 2006. [Tr. 14-24],  denied the plaintiff's claims for disability, disability insurance benefits and found the plaintiff not eligible for Supplemental Security Income. [Tr. 24]  At Step 1 the ALJ found the plaintiff had not engaged in substantial gainful activity since June 2, 2002, which is her alleged date of disability onset (20 C.F.R. § § 404.1520(b) and 416.920(b). [Tr.

17].  At Step 2 the ALJ found the plaintiff has the following severe impairments:  recurrent atypical non-cardiac chest pain, abdominal pain (peptic ulcers, gastro-esophageal reflux disease ("GERD"), esophageal strictures, pancreatitis, gastritis, and bowel obstruction /constipation, headaches/migraines, hypertension, obesity, costrochondritis, back pain, generalized pain, Diabetes [leading to syncope] and depressive disorder (not otherwise specified). [Doc. 17].  The ALJ further found that the plaintiff's contentions regarding total disability were not credible because the evidence of record does not support them. [Tr. 22]. At Step 3 the ALJ found  these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4 (20 C.F.R 404.1520(d) and 416.920(d). [Tr. 17]. At Step 4 the ALJ determined the plaintiff was able to perform her  past relevant work as a housekeeper (Tr. 22).  Since the ALJ finds that the plaintiff is not disabled and has not been disabled for any time relevant to this decision, it is not necessary to consider the remaining step in the sequential evaluation process. [Tr. 23].

The plaintiff sought review by the Appeals Council on February 6, 2006, along with an accompanying letter brief. [Tr. 51, 575-578].  The Appeals Council denied plaintiff's request on May 12, 2006. [Tr. 5-7].

## II.    REVIEW OF FACTS

The Plaintiff was fifty-seven years old when she became disabled and 60 years of age at the time of the hearing.  The Plaintiff was born on October 17, 1944. [Tr. 581].  The plaintiff never completed the 7th grade. [Tr. 582].  The plaintiff testified she reads at about a second or third grade level and can write her name. [Tr. 582].  The plaintiff's past

employment [the last fifteen (15) years ] has been as a hotel maid or housekeeper and dishwasher. [Tr. 23, 69, 90, 583-584].  The plaintiff claims disability due to pain, depression and other medical ailments.  The evidence shows that plaintiff has chronic chest and epigastric pain, and numerous gastrointestinal conditions. [Tr. 584].

      The plaintiff's extensive medical records begin in approximately June of 1996.  The plaintiff was seen at Gulf Coast Hospital complaining of acute chronic gastritis.  The plaintiff underwent a chest x-ray, a liver ultrasound and a brain scan.  The results of these tests were negative. [Tr. 152-54].  On May 27, 1997, the plaintiff returned to Gulf Coast Hospital and received a flat and upright x-ray of the abdomen which revealed, " [T]he visualized osseous structures are intact.  The bowel gas pattern is non specific.  There is slight gaseous dilatation of several small bowel loops which may represent minimal ileus.  No evidence of obstruction or free air is seen". [Tr. 174].  On January 29, 1999, the plaintiff returned to Gulf Coast Hospital and received a portable chest x-ray which revealed, "[N]o definite infiltrates or acute appearing abnormalities, mild cardiomegaly, no CHF". [Tr. 157].  On August 5, 1999, the plaintiff was admitted  to Lee Memorial Hospital with abdominal pain and rectal bleeding.  The diagnosis was an upper gastrointestinal bleed and the plaintiff was found to have shallow non-bleeding ulcers.  The sigmoidoscopy (with biopsy) was performed and revealed  mid sigmoid  ischemia and internal hemorrhoids. [Tr. 180].  A scout radiograph revealed a "[n]arrowed distal ileum suggestive of increased small bowel secretions." [Tr. 194].  A CT scan of the plaintiff's pelvis revealed a possible "[c]ystic structure near her urinary bladder." [Tr. 198].   In October, 1999,  a chest x-ray was taken and no cardiac abnormalities were found. [Tr. 176]

The plaintiff was admitted to Gulf Coast Hospital for chest discomfort and headaches. Dr. Sunil N. Lalla was the plaintiff's attending physician and Dale Haggman, D.O., was her consulting physician.  Dr. Haggman's impression: "[a]typical chest pain, hypertension with probable underlying hypertensive cardiovascular disease, codeine allergy hyper-cholesterolemia by history, hiatal hernia with gastroesophageal reflux disease, and status post hysterectomy and cholecystectomy."  Dr. Haggman recommendations: "[H]er cardiac enzymes thus far have been negative for myocardial injury and EKG demonstrates no acute changes.  Very likely, her pain is non cardiac but a cardiac catheterization may be warranted for definitive diagnostic purposes.  I will be happy to follow with you during her hospitalization and make recommendations as we go along". [Tr. 178-179].

The plaintiff was admitted to Gulf Coast Hospital on September 26, 2001, and discharged on September 30, 2001.   The plaintiff's principle diagnosis was ileus, with a secondary diagnosis of gastroesophageal reflux disease and hypertension, a small bowel obstruction was ruled out. The plaintiff had a normal electrocardiogram and was monitored on telemetry which showed no arrhythmias. Her CIP levels and her abdominal ultrasound were normal. [Tr. 199-204]. The plaintiff was discharged with Priolsec, nitroglycerin sublingual, and Macardia hydrochlorothiazide daily. [Page 199].

The plaintiff returned to Gulf Coast Hospital for chest pain.  The plaintiff's EKG showed normal and a Cardiolite Stress Test revealed, "[T]here is no evidence of significant inducible ischemia". [Tr. 214]. The plaintiff returned to the ER in February of 2002 and

another chest x-ray was taken and a brain CT. Again the brain CT was normal and the chest x-ray was unchanged from the previous ones. [Tr. 231, 229]. Upon her discharge on February 25, 2002, the plaintiff was diagnosed with costochondritis. [Tr. 222].

In June of 2002, the plaintiff presented at the hospital with chest pain, numbness in her left arm and pain in her left knee. [Tr. 240]. It was recommended that the plaintiff take a Cardiolite stress test again on an out-patient basis. The plaintiff was continued on Atenolol for her hypertension and Prilosec for her reflux disease. The plaintiff was prescribed Darvocet for her chest pain.

On November 22, 2002, the plaintiff was admitted to Lee Memorial Hospital for constipation, gas and epigastric pain with nausea. The plaintiff was initially diagnosed with a small bowel obstruction. The plaintiff's hospital course consisted of NG suction and later she was treated with a laxative. After five days in the hospital the plaintiff was stable and able to go home. [Tr. 257].

On December 7, 2002, the plaintiff returned to Lee Memorial ER after a fall. The plaintiff complained of neck pain and epigastric pain. The plaintiff was discharged with "[c]ervical strain and gastroesophageal reflux and Vicodin (2) p.o." The plaintiff received a prescription for Vicodin #15 to be used on an 'as needed basis'. [Tr. 266-267]. The plaintiff returned to the ER on 12/14/2002, with abdominal pain and chest pain. Dr. Chavakula, M.D. recommended outpatient esophageal manomertry, and if that was negative, a referral to either the UF or USF Swallowing Disorders and Esophageal Disorders Clinic. [Tr. 264].

On January 12, 2003, the plaintiff was admitted to Southwest Florida Regional Medical Center with headache and abdominal pain. It was determined the plaintiff had mild

epigastric tenderness and KUB consistent with ileus. There was right basilar atelectasis. The plaintiff was put on IV fluids and given lactose to clear her bowel. The plaintiff was discharged on January 17, 2003. [Tr. 268].

The plaintiff went to Gulf Coast Hospital ER on January 30, 2003. The plaintiff presented with chest pain, sweating, shortness of breath, pain in both shoulders, chest wall tenderness and increased chest pain upon deep breathing. The plaintiff reported rectal bleeding during times of constipation. [Tr. 269]. The plaintiff was discharged with a diagnostic impression of atypical chest pain, chronic constipation and history of dilations of the esophagus.

On February 12, 2003, the plaintiff went to Lee Memorial Hospital ER with abdominal pain. The assessment revealed acute abdominal tenderness and constipation. [Tr. 283-284]. On February 28, 2003, plaintiff went to Family Health Center with right shoulder pain radiating into her chest. [Tr. 281]. March 2003, plaintiff again complained of chest pain radiating into the left arm. [Tr. 279]. On the 10th of April plaintiff went to Southwest Florida Regional Medical Center for epigastric pain. The lab tests showed elevated pancreatic enzymes and elevated liver function tests. The plaintiff was diagnosed with pancreatitis and discharged. [Tr. 285]. The second April 2003 visit to the ER resulted in a seven day hospitalization. Tests results were normal with the exception of moderate gastritis. The plaintiff was discharged to go home. Diagnoses at that time was chronic pancreatitis, chronic abdominal pain secondary to the pancreatitis, depression, hypertension, dyslipidemia, GERD with esophageal stricture requiring dilation. [Tr. 286].

On May 29, 2003, the plaintiff was diagnosed with abdominal pain and tenderness at Lee Memorial Hospital. [Tr. 308]. The plaintiff was seen by Dr. Asif H. Choudhury of Consultants in Gastroenterology on May 29, 2003. Dr. Choudhury acknowledged the upper endoscopy dilation he had done on the plaintiff a year prior and that the plaintiff had been doing well. The doctor ruled "[e]sophageal spasm and ruled out achalasia[2] with GERD".

In June of 2003, the plaintiff followed up with Dr. Choudhury with continuing abdominal pain and headaches. Dr. Choudhury concluded "[f]ibromyalgia type of symptoms" causing esophageal motility problems [GERD]. [Tr. 311}. The plaintiff returned to the Lee Memorial Hospital ER, on June 27, 2003. Her examination revealed epigastric tenderness with reduced range of motion in her shoulder. [Tr. 315]. All other objective tests were negative and plaintiff was discharged with a diagnosis of "[a]bdominal pain, etiology unclear, benign." [Tr. 315-316].

On July 5, 2003, the plaintiff went to Southwest Florida Regional Medical Center and was admitted. The plaintiff complained of abdominal pain, dysphagia, weakness in her right hand and neck, and pain in her right shoulder. The plaintiff received a head CT which was unremarkable. The abdominal CT revealed a collapsed left colon[3]. The x-ray of the right shoulder did not reveal a fracture, but did show joint degeneration. After five days, the plaintiff was discharged. [323-325]. On July 21st, the plaintiff returned to Southwest Florida

---

[2] The failure of a ring of fibers [a sphincter] to relax, i.e.(muscular ring or valve). Stedman's Medical Dictionary,

[3] A colonoscopy was performed which was normal. The doctors' concluded they what they thought was a collapsed colon was probably a spasm.

8

Regional Medical Center and was released on July 24th. This time plaintiff's chronic pain syndrome was noted as "[p]ossible psychosomatic features". [Tr. 327].

The plaintiff returned to Digestive Specialists, P.A., on August 2003 and was under the care of Dr. Brent M. Myers. Dr. Myers suspected esophageal motility disorder. [Tr. 337]. [Tr. 357]. Dr. Myers diagnosed the plaintiff with dysphagia, possible achaolasia and anemia in September of 2003  On September 25, 2003, Dr. Myers reviewed the plaintiff's esophageal manometry study and concluded that while the plaintiff had normal peristalsis, she had a hypertensive lower esophageal sphincter. [Tr. 354-355]. On October 1, 2003, Dr. Myers recommended a surgical consultation for a laproscopic Heller myotomy. [Tr. 353].

On October 10, 2003, the plaintiff was seen by Dr. Kenneth Berdick, M.D., for her long history of esophageal problems. The plaintiff's grip strength and finger dexterity were normal. Dr. Berdick found the plaintiff to be in no distress and determined her activities of daily living were contradictory to her claim she could not work. He found plaintiff to have a full range of motion and her hypertension to be under control. [Tr. 391-395].

The plaintiff underwent the Heller myotomy surgery on November 11, 2003, to open her esophageal sphincter. The surgery seemed successful until the plaintiff returned to Southwest Florida Medical Center for the epigastric abdominal pain. The plaintiff was admitted to the hospital. [Tr. 396-97]. An Upper GI series and CT scan were performed. Both scans were negative and by December 2, 2003, the plaintiff was feeling better. The plaintiff received a musculoskeletal evaluation which was positive for arthritis and it was noted the plaintiff  appeared to be slightly depressed. [Tr. 401-402].

The plaintiff returned to the Family Health Center on January 27, 2004, complaining of headaches, bowel problems and stomach pain. [Tr. 433]. On March 12, 2004, the plaintiff went to a follow-up appointment still complaining of bad migraine headaches. [Tr. 435]. In April of 2004, the plaintiff still complained of chest pain and headaches. [Tr. 435]. The diagnoses were atypical chest pain, GERD, hypertension, headaches, depression and insomnia. [Tr. 435]. In September 2004, it is documented that the plaintiff's blood pressure was up and pain had returned to her head and arm. [Tr. 437]. In May, August, November and December 2004, the plaintiff made four visits to the ER at Lee Memorial Hospital for chest, epigastric and abdominal pain. [Tr. 463-466, 471-472, 480-485, 490-491].

The plaintiff was seen by Dr. Mark Kocab at the Manatee Surgical Center in December of 2004. The plaintiff presented with chest pain [of five days duration], and difficulty swallowing solid food. Dr. Kocab's diagnostic impression was chest pain with dysphagia and possible peptic structure with reflux. [Tr. 442-443]. The plaintiff underwent an esophagogastroduodensocopy (EGD) with esophageal dilation. [Tr. 444-445].

On February 3, 2005, Dr. Kocab wrote to Dr. Francisco Estevez that he thought the plaintiff "[h]as underlying costochondritis". On March 24, 2003, Dr. Kocab again wrote to Dr. Estevez advising the plaintiff still complained of persistent chest discomfort and regurgitation. Dr. Kocab prescribed Prevacid 30 mg. b.i.d. and mentioned performing an esophageal manometry and or a 24 hour pH. [Tr. 447-450].

### III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW

#### A. THE ALJ'S FINDING OF PLAINTIFFS RESIDUAL FUNCTIONAL CAPACITY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND THE ALJ ERRED IN EVALUATING THE MEDICAL EVIDENCE

The plaintiff contends that the ALJ erred in evaluating her subjective complaints of symptoms, including pain.

When a claimant alleges disability through subjectively reported symptoms, there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to produce the pain alleged.  20 C.F.R. 404.1529(a), 416.929(a); *Wilson* 284 F.3d at 1225 (factual findings conclusive if supported by substantial evidence).  This inquiry requires a claimant to produce objective evidence of a medically determinable condition that reasonably could be expected to cause the pain alleged.  42 U.S.C. 423(d)(5)(A); 20 C.F.R. 404.1529(b), 416.929(b).  A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled.  20 C.F.R. 404.1529(a) 416.929(a) *McCoy o/b/o McCoy v. Chater*, 81 F. 3d 44, 47 (6th Cir. 1995).

The ALJ found that the plaintiff had medically determinable and severe chest pain, gastric, headache, hypertensive, obesity with related pain, diabetic and depressive impairments. [Tr. 17, Finding 3].  The ALJ found the plaintiff met the initial threshold with regard to these impairments. [Tr. 19].

The ALJ is required to analyze the intensity and persistence of the claimant's symptoms.  42 U.S.C. 423(d)(5)(A).  The ALJ is charged with determining the actual level of

symptoms or pain the claimant specifically possesses, and determine credibility.  The ALJ considers the medical evidence from the treating and examining physicians and considers information received from the claimant regarding daily activities, the frequency and intensity of the pain alleged, medications taken and inconsistencies in the claimant's statements.  20 C.F.R. 404.1529(c)(2)-(4), 416.929(c)(2)-(4).  After considering a claimant's complaints of pain, an ALJ "may reject them as not creditable."  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

The record shows the plaintiff has a long history of various complaints but the ALJ found these were not entirely credible and her allegations were outweighed by the evidence of record. [Tr. 19].  The ALJ noted that many of the specific tests found no or at most mild, abnormalities.  The ALJ also noted that the record shows the plaintiff was deemed as being "100 percent" non-compliant with her medications. [Tr. 20, 506, 523].  The ALJ found the plaintiff's statements of her limitations to be "largely contradicted by her statements to her treating physicians". [Tr. 20, 523, 525].

The plaintiff testified regarding her living situation and about her activities.  The plaintiff contradicted herself as to how many grandchildren lived with her and activities that she was or was not able to perform. [Tr. 20, 595-601].  The Plaintiff testified that she directly cared for six grandchildren, yet one of the children belonged to her working daughter (who had four other children). [Tr. 20, 595-98].  The plaintiff also stated that another daughter helped her with the children.  This daughter also has three children. [Tr. 20, 600-01].  It appears that the plaintiff may be caring for as many as thirteen grandchildren.  The plaintiff did report the care of her grand children in a disability statement and during a psychological

interview. [Tr. 20-21, 123, 359].   The plaintiff testified to cooking, doing household chores, gardening, watching television and attending church. [Tr. 21, 359].  Based on these factors, the ALJ could not find the plaintiff's complaints of pain and incapacity fully credible. [Tr. 19-22].

Additionally, the ALJ found that the opinions of the State Agency non-examining physicians and consultative sources were well-supported by the examination reports and consistent with the substantial evidence of record. [Tr. 21-22.  Although the plaintiff received a great amount of treatment, her physicians did not indicate that she was limited in any way due to her various complaints.

### B. THE ALJ ERRED BY NOT FINDING PLAINTIFF MORE MENTALLY LIMITED OR PLAINTIFF'S DEPRESSION MORE SEVERE

The plaintiff was examined by Dr. Joseph J. White, Ph.D., a psychologist, on September 17, 2003.  The Plaintiff had been referred for an interview by the Office of Disability Determinations. [Tr. 257-260].    Dr. White documented that the plaintiff was well oriented to time and place but showed poor attention and concentrations skills.  The plaintiff advised her medications consisted of blood pressure medication and Vicodin.  The plaintiff presented her activities of daily living as "[g]etting up at 5:30 a.m. and getting her grandchildren off to school.  The plaintiff may do household chores and may cook.  The plaintiff sometimes sits in her yard or may work on her flowers.  The plaintiff watches T.V. until her bedtime at 9:30 p.m.  The plaintiff advised she did not sleep well and has a poor appetite.  The plaintiff goes to church, but does not drive or manage her own funds." [Tr. 358-360]. Dr. White determined that the plaintiff's judgment and insight were only fair

and found her I.Q. to be in the low average range. Dr. White concluded "[h]er current level of depression is considered to be a barrier to her overall functioning." [Tr. 257-260]. The plaintiff claims the ALJ erred by not addressing this statement.

The Eleventh Circuit has held that remand is not warranted unless an error shows, "unfairness" or clear prejudice". *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir 1991), *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) and *Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995).

Dr. White's September 2003 assessment that the plaintiff's depression was a barrier to her functioning was an assessment of her ability while she was not being treated. Dr. White noted that "[s]he admits to being depressed at present but is not being treated". [Tr. 358]. (The plaintiff was not being prescribed any anti-depressants or any other medications at the time she was examined by Dr. White). In a report three months later, [Dec. 2003] it is documented that the Plaintiff was negative for any psychiatric problems on her review of systems. [Tr. 401]. In January 2004, the plaintiff was prescribed Zoloft, an antidepressant and she reported taking this medication at later examinations. [Tr. 434-36]. In June and November 2004, the plaintiff was prescribed Trazodone, another antidepressant. [Tr. 503-566]. The plaintiff complained in some of her medical reports that she had difficulty sleeping and she was described Ambien. [Tr. 433, 499, 567-68]. There are no further reports in the record that the plaintiff complained of depression after Dr. White's December 2003 report.

## C.     THE ALJ ERRED BY FAILING TO DEVELOP THE RECORD

The plaintiff contends that one of the State Agency psychologists indicated in January 2004, that the record showed insufficient evidence to assess plaintiff's mental condition. [Tr. 419].

The ALJ has a basic obligation to develop a full and fair record which includes the duty to develop the medical records fully and fairly. *Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). The regulations normally require additional evidence, such as a consultative examination, only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. *Doughty v. Apfel* 245 F.3d 1274, 1281. (11th Cir. 2001) (citing 20 C.F.R. 404.1519(a)b) (2002). However, this must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that this case must be remanded to the Commissioner for further development of the record.

In this case, the plaintiff testified that she had some depressive symptoms. [Tr. 591]. The plaintiff received medication for those symptoms in 2004. [Tr. 433-36, 503, 566]. There are no statements from any of these physicians that the plaintiff complained of any further mental complaints or mental impairments or had any mental functional limitations. The ALJ had sufficient evidence to make a decision as to plaintiff's mental status and did not need to order a psychological consultative examination. 20 C.F.R. 404.1519a(b) [2002].

### D. THE ALJ ERRED BY FAILING TO PROPERLY DEVELOP THE RECORD REGARDING THE REQUIREMENTS OF PLAINTIFF'S PAST WORK

The plaintiff contends the ALJ did not properly develop the record regarding the requirements of her past job as a maid as she actually performed such work. [Pl.'s Br. At 23-24].

The ALJ evaluated this claim at step four of the sequential evaluation process. The ALJ also called upon a vocational expert (VE) regarding the exertional requirements of the plaintiff's past work as a housekeeper/maid, as that job is performed in the national economy. The VE found that the plaintiff's past job is performed at the light, unskilled level. [Tr. 602]. The ALJ then compared the plaintiff's established RFC for the full range of medium work with the requirements of her past job as it is generally performed in the national economy. Because the plaintiff could perform that job as it is generally performed, the ALJ determined the plaintiff was not disabled. [Tr. 22-23, Findings 6-7].

## IV. CONCLUSION

**IT IS, RESPECTFULLY RECOMMENDED:**

That the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.

**DONE and ENTERED** in Chambers at Fort Myers, Florida, this 17th day of July, 2007.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:
All Counsel of Record

John E. Steele, U.S. District Judge

Robert D. Kushner, Esquire
Attorney for the Plaintiff

Susan Roark Waldron, AUSA

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal and a *de novo* determination by a district judge. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *see also* Fed.R.Civ.P. 6; M.D. Fla. R. 4.20.